FERROCARRILES DEL ESTE, Plaintiff and Appellee, *v.* JOSÉ TORO RÍOS, ETC., Defendants and Appellants.

No. 4801. Argued February 7, 1929.—Decided July 16, 1929.

R. *Cuevas Zequeira* for the appellants. *González Fagundo & González Jr.* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

After first having entertained the opposite view the District Court of Humacao on a motion of reconsideration overruled a demurrer to a complaint in eminent domain. When this action was taken the defendants stood on their demurrer and judgment was rendered for the plaintiff. On appeal two assignments of error are presented and discussed together.

The plaintiff obtained a declaration of public utility from the Executive Council of Porto Rico. The appellants maintain that, while the former Executive Council had power to issue such a declaration, the operation of the Organic Act of Porto Rico stripped it thereof and transferred or conferred the said power to the Public Service Commission.

With or without the authorities cited by the appellants we are thoroughly convinced that in a condemnation of property for public purposes the law authorizing such condemnation must be strictly followed, although not so strictly as to defeat the evident purpose of the Legislature. 20 C. J. 533 *et seq.*

Proceedings in eminent domain were authorized by acts passed in 1903 and 1908. Under these acts the Executive Council, as then constituted, made declarations of public utility. By the Organic Act of 1917 the legislative powers of the said Executive Council were transferred to the Senate

of Porto Rico. Certain other powers, and especially the granting of franchises, were given to a public-service commission. Some other powers theretofore expressly granted by the Legislature of Porto Rico to said Executive Council were not mentioned at all in the said Organic Act.

An executive council is mentioned in the new Organic Act, but the persons or officials who compose it are different and the powers conferred upon it are nominally so distinct that no question can exist that the executive council created by the Foraker Act of 1900 absolutely ceased to exist.

The District Court of Humacao on first considering the two Organic Acts very properly held that the power to grant franchises had been transferred from the old Executive Council to the Public Service Commission. The court deduced from this fact that the declaration of public utility in this case should be made by the Public Service Commission. When on a motion for reconsideration the attention of the district court was drawn to the local Act of November 17, 1917, the court changed its decision. That Act conferred upon the new Executive Council all the non-legislative powers that had been previously conferred upon the old Executive Council, saving necessarily any powers conferred upon the Public Service Commission by the new Organic Act.

In the absence of a specific provision to the contrary in the Organic Act, the regulation to be had in condemnation proceedings belongs to the Legislature of Porto Rico. The power to make declarations of public utility was conferred upon the old Executive Council not by the Foraker Act but by the Legislature. Similarly, the right conferred upon the new Executive Council to make declarations of public utility proceeds from the Legislature. The point to be emphasized is that the right of eminent domain is a general legislative right. Both organic acts are silent on this branch of governmental power, but the right to exercise it follows from the general legislative powers. *Ponce Lighter Co.* v. *Municipality of Ponce,* 19 P.R.R. 725; *People* v. *Neagle,* 21 P.R.R. 339.

Therefore the present Executive Council has all the powers that had the old Executive Council, with the exception of the ones distinctly derogated by the Organic Act conferred by Congress.

As in this case we are concerned with a public franchise, could it perhaps be said that every feature of the franchise should be passed upon by the Public Service Commission? It is evident to our minds that the granting of a public franchise is one thing and the taking of private lands for public purposes is another. A franchise may and generally does include the right to condemn lands, but the procedure to be followed in taking private property must be determined by the Legislature. We discover nothing in the Organic Act that conferred upon the Public Service Commission the right to determine the procedure in taking private lands and the said commission has not, at least in this case, attempted to exercise such a power. As pointed out by the appellee, it is one thing to make a general declaration of public utility and another to say that a particular piece of land should be condemned for public uses. It would be absurd to suppose that the Public Service Commission, as constituted, should intervene in the condemnation of private lands of particular citizens. Its right is limited to general grants.

The appellants then insist that the declaration of the Executive Council was insufficient. They concede that the property to be condemned was sufficiently described in the declaration made by the Executive Council, but insist that the said Council should have made a general declaration. This general declaration would have been perhaps indirectly involved by the concession of the franchise, but it was directly made by the franchise, to which the Executive Council made a specific reference. The theory of the appellants evidently is that the whole procedure should take place either in the Public Service Commission or in the Executive Council, but the labor is plainly susceptible of division. The declaration of public utility with regard to the lands condemned was

contained in the resolution passed by the Executive Council and was not a mere preamble thereto, as appellants contend.

We agree with the appellee that under existing law or. laws a private person in this case might obtain the right to condemn and that such right did not belong exclusively to the Commissioner of the Interior, although the same right was previously conceded to him.

Antonio Roig originally obtained the franchise and transferred it to the "Corporación Ferrocarriles del Este," the complainant in this case. Appellants maintain that the right to condemn can not be transferred and they are right. However, a transfer of the franchise can and did take place and when this transfer, as set out in the complaint, was approved by the Public Service Commission, the right to condemn went with the approval. It was equivalent to a new authority.

Likewise we agree with the appellee that the offer of payment made by the original grantee of the franchise would redound to his grantee.

The judgment will be affirmed.